■ In the Matter of the Claim of BELLA GOLDMAN, Respondent, against BONDSON PRESS et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.— Appeal by the employer and carrier from a decision and award by the Workmen's Compensation Board in a death case. The decedent had been employed as a pressman in a printing plant. While he was at work washing or cleaning one of the printing presses, he suddenly fell to the floor. He was found lying face down, in an aisle between the presses and two tables. The fall itself was unwitnessed; a " loud thud " was heard by the employer's production manager and, when he turned around, he found the decedent on the floor, bleeding from the eyes, ears and nose. The decedent was pronounced dead shortly thereafter. The cause of death was given upon the medical examiner's report as " Chronic Cardiac Hypertrophy; Coronary Arteriosclerosis. Fatty Heart ". The report also disclosed that the decedent had suffered a linear fracture of the skull on the left side and a hemorrhage into the scalp surrounding the left eye and that there was a bruise around the left eye. There was a considerable conflict in the medical testimony as to whether the skull fracture contributed to the decedent's death. The physicians called by the carrier testified that the decedent had died of a heart attack before he struck the floor and that he was dead when he suffered the skull fracture. On the other hand, there was medical testimony that he was still alive at the time he sustained the skull fracture and that the fracture was a contributing cause of his death. In this situation, we conclude that there was sufficient evidence to sustain the board's finding of a causal connection between the fracture and the decedent's death. However, this does not dispose of the question of whether the decedent had suffered a compensable accident. There was no claim upon the hearings and there was no finding by the board that the heart attack suffered by the decedent had been brought on by undue strain or overexertion and that the attack of itself constituted an industrial accident. In these circumstances, if the decedent fell directly to the floor as the result of the heart attack, there was no compensable accident, since no added risk attributable to the employment was involved (Matter of Dasaro v. Ford Motor Co., 280 App. Div. 266, motion for leave to appeal denied, 304 N. Y. 986; Matter of Montanari v. Lehigh Portland Cement Co., 282 App. Div. 1082; Matter of McCann v. Hy-Al Luncheonette Co., 284 App. Div. 1079). The case was tried by the claimant's attorney upon the theory that, as the decedent fell, he struck some object on the way

down before he reached the floor. The claimant's attorney thus sought to bring the case within the "added risk" or "special hazard" doctrine of *Matter of Connelly* v. *Samaritan Hosp.* (259 N. Y. 137). It appears that there was a barrel or container near one of the tables. It was at first testified by the employer's production manager that the so-called barrel was a metal drum about thirty inches high. At a subsequent hearing, however, he corrected his testimony and stated that the so-called barrel was made of cardboard with a thin metal rim on the top. The employer himself later testified to the same effect. Also, the production manager had at first testified that, as the decedent was lying on the floor, his head was six inches from the barrel. He subsequently corrected this to two and one-half to three feet, explaining that the presses and equipment had been moved about after the decedent's death and that he had confused the situation as it currently existed with that which had existed at the time of the decedent's death. There was also proof that there was a metal drip pan under the press in which oil and other waste from the machine were caught. This drip pan extended a few inches beyond the machine and had slightly raised sides. In its original memorandum of decision, the board noted that, as the decedent was found on the floor, his head was about six inches from a waste container but nothing was said about any contact between his head and the container. In a supplemental memorandum of decision handed down after a notice of appeal had been served, the board found that "it can be inferred that while washing the machine he [the decedent] slipped and fell with his head striking either a part of the machine he was at the time washing and, or the 'barrel' which was located under the machine, before landing on the floor". The memorandum of the board obviously confused the so-called barrel which the witnesses had described as standing near a table with the drip pan under the machine. Thus the board said that the barrel near which the decedent lay "was used to catch drippings of oil from the machine, and according to the record was located * * * under the machine." The formal findings subsequently issued by the board did not clear up the confusion. The formal findings are to the effect that the decedent "slipped and fell striking his head on a part of the machine or a barrel located near the machine." In view of the position in which the decedent's body was found, it was impossible for the decedent's head to have come in contact with the drip pan under the press. The decedent may possibly have struck the so-called barrel or container near the table but, in view of the board's confused statements and findings on this subject, the case is one which seems to us to require further consideration by the board. There is nothing whatever in the record to sustain the afterthought in the board's supplemental memorandum and formal finding that the decedent had "slipped". On the contrary, as has been indicated, the case was tried and submitted upon the theory that the decedent collapsed because of a non-work-connected heart attack; the crucial question was whether he fell to the floor without further incident or whether he struck an object on the way down (see cases cited *supra,* and 1 Larson on Workmen's Compensation Law, §§ 12.10–12.14). Decision and award of the Workmen's Compensation Board reversed, with costs to the appellant against the board, and the case is remitted to the board for further proceedings. Foster, P. J., Bergan, Coon, Halpern and Zeller, JJ., concur.