### NELSON v. CIRCUS SUPPLY & HARDWARE CO., et al.

Industrial Commission.

March 20, 1956.

68

James E. Wood, Jr., Sarasota, for claimant.

R. Corbin Glos, Tampa, for the employer and insurance carrier.

JAMES T. VOCELLE, Chairman and JAMES CAMERON, Commissioner.

This cause came on to be heard on the claimant's application for review of an order dated December 22, 1955 denying claim for compensation and other benefits, and the employer and carrier's motion to dismiss the application for review.

The facts in the instant cause are not in dispute. On June 9, 1955, claimant rode to work with his foreman, who parked the automobile under a tent on the premises of the employer. Shortly thereafter, and approximately five minutes prior to the time he was to commence work, claimant opened the door of the automobile, stepped out, placing his right foot on the ground and then putting his left foot on the ground. He immediately collapsed, and as a result of the fall suffered comminuted fractures of the left femur at the head and neck of the femur. The deputy commissioner, found, inter alia, that "claimant's injury conclusively did not result from an accident which arose 'out of' his employment."

Prior to discussing the merits of the claimant's application for review, we shall discuss the employer and carrier's motion to dismiss the application on the basis that the grounds for review are not stated concisely. Section 440.25(4), Florida Statutes 1955, provides, inter alia, that the application for review must state *concisely* the grounds upon which the appellant relies and that consideration of the commission will be confined solely to the grounds so presented. Rule no. 4 of the rules of procedure before the full

commission [4 Fla. Supp. at p. 237] adopts the language of the statute. Rule no. 11 provides that the cause shall be dismissed upon motion of any interested party for failure to comply with rule no. 4. The claimant's grounds for review are as follows—"Petitioner represents that the findings and provisions of said order are contrary both to the law and evidence in the cause and that the deputy commissioner erred in not awarding proper compensation."

In claim #S-75388, Louis Skrobick v. Pioneer Growers .Cooperative, decision file #2-402 [9 Fla. Supp. 46], the commission denied a motion to dismiss in an almost identical situation. In the Skrobick case we discussed in detail the reasons for denying the motion to dismiss, and cited Johnson v. Johnson, Fla. 1946, 28 So. 2d 438, as authority in support of our position in denying the motion. In the instant cause we reaffirm the reasons as stated in the Skrobick case, and on authority thereof the employer and carrier's motion to dismiss is denied.

It appears, as stated before, that the parties agree on the essential facts of this cause, and, as stated by the deputy in his order —"The employer/carrier concedes that the injury arose in the course of the claimant's employment, but contends that it was not the result of an accident which arose out of such employment; ***." In support of his ruling, the deputy cites Protectu Awning Shutter Co. v. Cline, Fla. 1944, 16 So. 2d 342, and quotes from Larson's treatise on Workmen's Compensation Law, section 12.14.

In the Protectu case the claimant was an old man subject to fainting spells, and during the course of his employment he fell and fractured his skull on the concrete floor. In affirming an award of compensation by the circuit court, the Supreme Court stated— "The fact that Cline suffered from heart disease, which no doubt caused him to fall, does not preclude recovery. The chances are he might have fallen and sustained a fatal injury in his own home, yet it is less likely had he remained in the quiet of his own home, *for without the physical exertion encountered in his work by a man of his age and physical condition, the chances of his falling were less likely."* (Emphasis supplied.)

Mr. Larson's analysis of the principle governing idiopathic falls is entirely consistent and compatible with the principle enunciated above. Larson states in his text, section 12.14, at page 169—"In summary: the only principle on which the effects of falls, caused by internal weakness or disease, can be made attributable to the employment *is the idea that the environment supplied a hazard which, added to the idiopathic fall, produced the ultimate injury.* Whether or not, in the light of recent cases, it may be correct to say

that the majority of the newer cases permit recovery even when the fall is to a level hard floor, *this should not be taken to mean that the necessity for showing some contribution by the employment to the risk has altogether disappeared.*" (Emphasis supplied.)

It is interesting to note the later cases cited in the supplement to Larson's treatise. In Employers Mutual Liability Insurance Co. v. Industrial Acc. Commission (Cal. Dis. Ct. of App. 1953), 253 P. 2d 737, it was held that an idiopathic fall on a cement floor was not a special risk of employment. Two other cases are also cited which deny claim for compensation when injuries are suffered as a result of idiopathic falls, i.e., Dasaro v. Ford Motor Co. (1952), 280 App. Div. 266, 113 N.Y.S. 2d 413, and Montanari v. Lehigh Portland Cement Co. (1953), 282 App. Div. 1082, 126 N.Y.S. 2d 180.

In Foxworth v. Florida Industrial Commission, Fla. 1955, 86 So. 2d 147, our Supreme Court in discussing the Protectu v. Cline case, supra, stated—"In the Cline case we upheld recovery for effects of a fall caused by the heart attack of the claimant who as a result fractured his skull on the concrete floor. This decision is justified on the basis that the hardness of the floor was an increased hazard attributable to the employment, *but that case represents the outer limits of the doctrine.* To extend the rule further would be to eradicate completely the statutory requirement that the injury must be one arising out of the employment. *The employment in some manner must contribute an increased hazard peculiar to the employment.*" (Emphasis supplied.)

We are of the opinion that the deputy commissioner was correct when, as a matter of fact and law, he determined that there was no increased hazard connected with the employment at the instance of the fall and therefore said injury by accident did not "arise out of the employment."

Having considered the cause upon the record and oral arguments of counsel, it appearing that the deputy's findings of fact are supported by competent substantial evidence, which accords with logic and reason, and that his order accords with the essential requirements of law within the meaning of U.S. Casualty Co. v. Maryland Casualty Co., Fla. 1951, 55 So. 2d 741, the deputy commissioner's compensation order dated December 22, 1955 is affirmed.

WALTER L. LIGHTSEY, Commissioner (dissenting).

This commissioner dissents from the majority opinion. The deputy, in denying the present claim, has committed two errors: *first,* in his finding of fact, without any support in the record

whatsoever, that claimant's leg was subject to numbness or "other condition"; *second,* an error in law in concluding that such "condition" barred recovery. In short, wrong law has been applied to non-existent facts.

The facts in this case are simple. The claimant, a 74-year-old workman, goes to work in the morning and enters the premises of his employer. He alights from a car and commences to walk from one point on the premises to another where he had to do something required by his job—punch the time clock. He takes but 2 steps on the sandy soil, falls down and injures himself. That is all that there is to this case. That is all that there is in the record. What simpler or clearer case than the one now before us could better exemplify the purposes of the workmen's compensation law—to compensate a workman for work-connected injuries? And yet, it has been held here that the claimant is entitled to nothing—no compensation for the time he has lost and no medical benefits for the treatment of his injuries.

Immediately following his fall, claimant's cries for assistance were responded to by fellow workmen who removed him to a hospital. However, there were no witnesses to the actual fall. The sole testimony relating to the incident is that of the claimant. No other evidence on the point is in the record. He testified that he was walking and that he fell. "Tell us precisely what caused you to fall" is the nature of the inquiry at the hearing. In substance he replies—"It all happened so sudden I don't know just how I did fall." This essentially is the whole record in this case. Here we have a workman who is admittedly on the job, is walking to do something connected with the job and while so walking falls down and injures himself. But, because he cannot describe precisely how he fell, he is excluded from the benefits of the Act.

Unexplained falls are not uncommon. Very often the momentary lapse of time between cause and effect, so infinitesimally short in duration that the cause and effect are practically contemporaneous, defies the victim's power of analysis and description of the event. However, the fact that the cause is unexplained does not give license to speculate that perhaps it was caused by an apoplectic fit or a coronary attack or a sudden onslaught of dizziness or "numbness or other condition."

There is no Florida decision with respect to a fall suffered by a workman, the cause of which remains unexplained. "Unexplained falls" are the subject of extensive discussion in Larson's "Workmen's Compensation Law," Volume I, section 10.31—"Most courts confronted with the unexplained-fall problem have seen fit to

award compensation. The leading case in the field, both because it was the earliest, and because it is a carefully-considered pronouncement by England's highest court on the meaning of the Act from which almost all American acts were copied, is Upton v. Great Central Railway Company (1924), A.C. 302 (H.L.), in which compensation was awarded to an employee who fell on a railway platform in the course of a business errand. The opinion emphasizes that the platform was not slippery or defective in any way; the cause of the fall was completely unknown." (Italics added.)

After lengthy citation of authorities in support of the text, the author continues—"In another case involving a completely inexplicable fall, the North Carolina Supreme Court in effect said that when an accident occurred in the course of employment, *and there is no affirmative evidence that it arose from a cause independent of the employment,* an award would be sustained. Robbins v. Bossong Hosiery Mills, 17 S.E. 2d 20 (1941)." (Italics added.)

Notwithstanding the present case, from the record before us, involves an unexplained fall, the deputy commissioner rests his denial of the claim on Protectu Awning Shutter Co. v. Cline, 16 So. 2d 342, and Foxworth v. Florida Industrial Commission, 86 So. 2d 147. Neither of the cited cases dealt with unexplained falls. On the contrary, the causes were well explained by the carrier. In the Protectu case, there was *evidence* in the record that the fall was caused by a fainting spell. In the Foxworth case, it was established by *evidence* in the record that the claimant suffered a stroke which caused the fall. In the case now before us, there is not one word in the record even suggesting that the claimant fell because he fainted, or had a stroke or an apoplectic fit or had a "condition" in his leg. Without any showing by the carrier, without any basis in the record, but purely by speculation, the deputy has assigned a cause for the fall.

The deputy states on page 3 of his order—"The numbness or *other condition in and of itself* caused his leg to give way." The word "numb" or "numbness" appears nowhere in the record. It was not contended by the carrier and there is no evidence whatsoever that the fall was caused by "numbness." Nor, did the carrier produce any evidence, medical or otherwise, that this claimant's legs had "a condition in and of itself which caused his leg to give way." The only testimony is that of the claimant who says he fell while walking but doesn't know how it happened. Accordingly, it is the opinion of this commissioner that the deputy's finding of fact that the claimant had a "numbness or *other condition*" in his leg is completely without support in the record and constitutes error.

The second error is one of law. Based on his finding that the claimant had a "numbness or other condition" in his leg, the deputy concluded as a matter of law that the fall and consequent injuries were not by accident arising out of and in the course of his employment. The sole reason assigned is that the condition was "idiopathic."

It may well be in some branches of the law that words may acquire a specific and crystallized meaning and become what we call "words of art" and such words themselves can determine the rights of parties. But in workmen's compensation law there is no such magic word, even if it be a Greek word and a long one. An "idiopathic" condition is defined as one which is characteristic of or peculiar to a person. The word itself cannot be the criterion of compensability or non-compensability. Some claimants with "idiopathic" conditions are entitled to benefits; others are not. The *facts* determine compensability, not the word.

For example, let us assume that a workman has an "idiopathic" condition consisting of diseased coronary arteries or is subject to epilepsy and while on the job in a complete or relative state of rest he dies or is otherwise disabled because of a coronary occlusion or an epileptic fit. This is not compensable because what happened was not work-connected. It was completely unrelated to any act of employment and was due *solely* to the workman's "idiopathic" condition. Let us assume, however, another case. A workman has an "idiopathic" condition of the spine consisting of a congenital defect. He bends down to reach an object and suffers an injury to his spine. This is the typical "pre-existing condition" case which is held compensable, often expressed by the Supreme Court in the phrase "the employer takes the employee as he finds him." The difference in the two examples is that in the first the "idiopathic" condition itself was the *sole* cause of the disability; in the second example, *it is the "idiopathic" condition in conjunction with the work-connected act which brings about the workman's injury.*

Assuming that the claimant in the present case had a "condition" in his leg, how can it be said that the condition *"in and of itself,"* as stated by the deputy, is responsible for the injuries when it is uncontroverted that the whole incident was tied in with his act of walking? Walking on the job is as much an act of employment as other functions performed by a workman for his employer. A workman deals with things; a part of his job is to "locomote" himself so that he can reach and handle those things. If the thing is on the floor, he bends his back; if it is above him, he extends his arms; if the thing is beyond the bend of back or reach of arms, he calls upon

his legs. Bending, reaching, walking—all are acts of employment. If his back is weak because of a "condition," and he bends and injures it, we say that is compensable. If his arm structure is weak and he reaches up and suffers an injury, that, too, is compensable. What basis, then, for difference if with legs which are weak he walks on his job and falls and suffers injury?

The order denying the claim should be reversed and the cause remanded for further proceedings.